## Eskridge v. Deweese, et al.

(Decided May 10, 1918.)

### Appeal from Grayson Circuit Court.

1. Remainders—Cross-Remainders.—Where a particular estate is conveyed to several persons in common, or various parcels of the same land are conveyed to several persons in severalty, and upon the termination of the interest of either of them his share is to remain over to the rest, the remainders so limited over are said to be cross-remainders.

2. Remainders—Cross-Remainders.—Cross-remainders cannot arise in deeds without express limitation; in wills they may arise by implication.

3. Wills—Devise to Daughters and Their Children—Construction—Estate Created.—A devise of a farm to the testator's daughters D. and J. and "their children" vested the first takers with life estates in one-half of the land devised and did not create cross-remainders whereby the share of one daughter who died without issue would go to the children of the other daughter. In that case the share of the daughter who died without issue passed to the testator's heirs, as undevised property.

J. M. CAMPBELL for appellant.

R. O. JONES, L. A. LAURENT and WOODWARD & KIRK for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Dr. John O. Tunstall of Grayson county died in 1859, leaving a will which contained this clause:

"I bequeath to my beloved wife Frances Tunstall and my two daughters Dulcena B. and Jósephine B. Tunstall my home farm, a certain negro girl named Carilla, and all of my personal property, money and choses in action, after paying my just debts and other specific le-

gacies hereafter named. I desire them to have this property jointly during the life of my wife Frances, and after her death I desire it all to go to my two daughters aforesaid and their children free from the control of any husband they may hereafter have. I desire that if either of my daughters die before my wife that their part should go to my wife during her life and after her death to my two sons John and James and their children.''

The testator's wife Frances survived him and died leaving the daughters, Dulcena and Josephine, surviving her. In 1863, Dulcena and Josephine conveyed the home farm which had been devised to them by their father, to John Fentress. Josephine married Holmes and died leaving one child, J. J. V. Holmes, surviving her. Shortly after Josephine's death her son J. J. V. Holmes, brought an action against John Fentress, to recover the home farm, or a moiety of it, claiming it as devisee under his grandfather's will. Holmes prevailed in the circuit court, and upon an appeal that judgment was affirmed in 1872, in an opinion by Judge Lindsay, in which he used this language:

''The devise to Dulcena B. and Josephine B. Tunstall and their children vested the first takers with life estates in the tract of land devised, with remainder over to such children as might thereafter be born to them.

''At the time of the death of Josephine, she had but one child, the present appellee. The title to one-half of the tract of land passed to him upon his mother's death, and his right of entry at once accrued.'' See Fentress v. Holmes, 5 Ky. Op. 22.

Upon the final determination of that case by this court the home farm was divided into two parts, and J. J. V. Holmes took possession of one-half of the land. The other half, constituting the 110 acres now in controversy, remained in the possession of Fentress, who conveyed it to his daughter, the appellee, Betty Deweese, in 1898.

In 1915, J. J. V. Holmes claiming to be the heir of his mother and also of his aunt Dulcena Tunstall executed a deed conveying to the appellant W. H. Eskridge the land in controversy for a consideration of $800.00. Dulcena Tunstall died in April, 1916, without issue, and shortly thereafter Eskridge brought this action against Betty Deweese and J. J. V. Holmes, seeking to recover the 110 acres that had been set aside to Dulcena, and

which he had bought from Holmes in 1915, as above recited, or to have a money judgment against Holmes in case the land should not be recovered.

Betty Deweese answered claiming the fee under the deed of 1863 from Dulcena and Josephine to her father Fentress, and also by prescription. The heirs of Dr. Tunstall presented an intervening petition and were made parties to the action. They claimed that on the death of Dulcena without issue, her one-half of the home farm passed to the heirs of the testator as undevised estate, and that the deed from Dulcena and Josephine Tunstall to Fentress carried only the life estate of the daughters.

Following the language of Judge Lindsay's opinion in Fentress v. Holmes, *supra,* the circuit court held that Dulcena and Josephine Tunstall each took an undivided half interest in the home farm, for life, with remainder in the undivided half devised to Dulcena, to her children, should she have any; and, that she having died without issue her half passed to the heirs of Dr. Tunstall as property undisposed of by his will.

The circuit court further held that the shares thus acquired through Dulcena and Josephine passed by their deed to John Fentress, and from him to the defendant, Betty Deweese; and that she was now the owner of two shares of said 110 acres, there being six shares in all. The remaining four shares were adjudged to be undevised estate and the property of the heirs of Dr. Tunstall. Eskridge appeals; and Betty Deweese has taken a cross appeal from so much of the judgment as awarded the four shares to the heirs.

The claim of the appellant Eskridge to the entire estate under his deed from J. J. V. Holmes is based upon the theory that Dulcena and Josephine took life estates with remainder over to "their" children, thereby meaning the children of both daughters, and that the testator never intended that any part of the home farm should descend to his heirs unless both of his daughters should die without issue; and that as Josephine left a son J. J. V. Holmes surviving her, he took the interest of both his mother and his aunt, thereby acquiring the entire estate. Appellant would sustain this claim upon the theory that a cross-remainder will be raised by implication to carry out the intention of the testator and for the purpose of defeating a partial intestacy.

The circuit court was of opinion that the will as construed by this court in Fentress v. Holmes, *supra,* did not raise such an implication; and in that conclusion we concur. A cross-remainder is defined by Bouvier as follows:

"Where a particular estate is conveyed to several persons in common, or various parcels of the same land are conveyed to several persons in severalty, and upon the termination of the interest of either of them his share is to remain over to the rest, the remainders so limited over are said to be cross-remainders. In deeds, such remainders cannot arise without express limitation. In wills, they frequently arise by implication; 1 Prest. Est. 94; 2 Hillard, R. P. 44; 4 Kent 201; Chal. R. P. 241."

It is conceded that the will in hand contains no express provision that would create a cross-remainder. It is insisted, however, that it arises by implication, as may be done under a will. In our opinion, however, this question is closed by the former opinion of this court in Fentress v. Holmes, *supra,* since the court, in that case, having plainly said that the title to one-half of the home place passed to J. J. V. Holmes upon the death of his mother, Josephine, it necessarily follows that the title to the other half remained in his aunt Dulcena for life with remainder to her children if she should leave any. In other words the court held that the daughters Dulcena and Josephine severally took an undivided one-half interest in the home farm with remainder to their respective heirs, and not to the heirs of both daughters collectively; and, that J. J. V. Holmes took title only to the half interest in which his mother held the life estate.

This would seem to be but a reasonable construction of the first clause of the will, above quoted, which further provided, that in case either daughter should die before her mother, the share of such deceased daughter should go to her mother for life with a remainder to the testator's two sons, John and James and their children. This provision certainly never contemplated that the share of Dulcena should, in case of her death without issue, remain over to her sister Josephine, or her children; and, as we have seen, such a construction must be given to raise a cross-remainder.

If appellant is right in his contention that the heirs of both daughters took collectively, and not severally, the

court never could have determined, in 1872, when it decided Fentress v. Holmes, *supra*, what interest belonged to Josephine's son. Dulcena was then alive; and if she should have had children thereafter, according to the contention of appellant those children would have taken *per capita* with Holmes, and no one could have known until Dulcena's death who would participate in the division, or what interest Holmes would then take.

But the court did not so construe the will; on the contrary it said that "the title to one-half of the (entire) tract passed to him (J. J. V. Holmes) upon his mother's death and his right of entry at once accrued." The court could not have reached this conclusion except by holding that the will devised an undivided one-half interest in the home place to each daughter, for life with remainder in each share to the children of that daughter. That it did so hold is clear beyond a doubt. This conclusion disposes of the appeal and the cross appeal in this case.

The contention of the heirs of Dr. Tunstall that the judgment of the circuit court erroneously awarded to Betty Deweese the two shares in the 110 acres that descended to the heirs of Dulcena and Josephine Tunstall is not before the court either by appeal or by cross appeal, and is, therefore, not considered.

Judgment affirmed upon the appeal and upon the cross appeal.